UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

                              Plaintiff,

               -against-

DAGOBERTO GIRALDO PEREZ,

                              Defendant.

----------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-6-14
```

09 Cr. 84 (RWS)
13 Cr. 952 (RWS)

SENTENCING
OPINION

**Sweet, D.J.**

        On January 29, 2014, Dagoberto Giraldo Perez ("Giraldo Perez" or "Defendant") pleaded guilty to conspiracy to manufacture cocaine for import into the United States, and importation of cocaine, and conspiracy to obstruct justice.

        For the reasons set forth below, Giraldo Perez will be sentenced to 210 months' imprisonment followed by one year of supervised release, subject to the scheduled sentencing hearing on October 7, 2014. Defendant shall forfeit to the United States all property real and personal involved in the offense of conspiracy to manufacture and import cocaine, or traceable to such property. Defendant is also required to pay a special assessment of $200.

1

## Prior Proceedings

Defendant was named in a one-count indictment filed in the District of Columbia on February 11, 2009.  The sole count ("Count 1") of the indictment charges that on December 1997, the exact date being unknown to the Grand Jury, and continuing thereafter up to the present, in the Republic of Colombia, Mexico, Honduras, Guatemala, the United States, and elsewhere, Giraldo Perez a/k/a "Percheron," conspired to: (1) import into the United States five kilograms or more of a mixture and substance from the Republic of Colombia and (2) manufacture and distribute five kilograms or more of a mixture or substance containing a detectible amount of cocaine, a Schedule II controlled substance, intending and knowing that such substance would be unlawfully imported into the United States. Jurisdiction of this case was transferred to the Southern District of New York on December 5, 2013.

Defendant was named in a three-count indictment filed in the Southern District of New York on May 20, 2009.  The third count ("Count 3") charges that from at least in or about 1999 up to and including in or about 2006, in the Southern District of New York and elsewhere, Giraldo Perez a/k/a "Percheron" a/k/a "Perche," and others, conspired to: (1) corruptly persuade

another person and engage in misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to law enforcement officers and judges of the United States of information relating to the commission of a federal offense, in violation of 18 U.S.C. §§ 1512(b)(3), 1512(h), and 1512(k) and (2) to obstruct, influence, and impede an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), 1512(h), and 1512(k).

On January 29, 2014, Giraldo Perez appeared before the Court and pleaded guilty to Count 1 and Count 3 in accordance with a plea agreement which stipulates the following:

     (a)   In the instant case, Defendant agrees that, pursuant to U.S.S.G. § 2D1.1, Defendant is accountable for more than 150 kilograms of cocaine, a Schedule II controlled substance. Accordingly, pursuant to § 2D1.1(c)(1) of the United States Sentencing Guidelines ("Guidelines), the base offense level for the crime to which Defendant is pleading guilty is 38.

     (b)   The United States will recommend, and the Defendant agrees, that the Defendant be given a two (2) level increase for obstructing or impeding the administration of justice pursuant to U.S.S.G. § 3C1.1.

     (c)   Prior to sentencing, in consideration for Defendant's plea of guilty and contingent upon Defendant's complete and truthful testimony and

3

Defendant's complete and truthful rendition of facts to the Probation Office for the preparation of Defendant's Pre-sentence Investigation Report, the United States will recommend that Defendant be given a three (3) level credit for acceptance of responsibility under U.S.S.G. § 3E1.1.

(d)   In calculating the Guidelines range, the parties agree not to seek any adjustment to Defendant's offense level pursuant to Chapter Three of the Guidelines other than to seek an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 and a two level enhancement in the instant case for obstruction of justice pursuant to § 3C1.1 as noted in the plea agreement.

Defendant is scheduled to be sentenced on October 7, 2014.


**The Sentencing Framework**


In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed —

4

      (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)   to afford adequate deterrence to criminal conduct;

      (C)   to protect the public from further crimes of the defendant; and

      (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for —

      (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the
Presentence Investigation Report ("PSR") with respect to
Defendant's personal and family history.

**The Offense Conduct**

Giraldo Perez, a/k/a "Pecheron," was hired by Ramiro
"Cuco" Vanoy ("Vanoy"), a member of Los Pepes[1] who later became a
high ranking member of the Autodefensas Unidas de Colombia
("AUC")[2], to provide for his personal security against a death
threat issued by Pablo Escobar.  From there, Giraldo Perez began
to enter the drug trafficking business.

Between 1995 and 1997, Vanoy, Nicolas Bergonzoli
("Bergonzoli"), and Giraldo Perez were partners in what was
known as the "L4" drug organization.  In this agreement,

---

[1] In early 1993, Los Pepes (translated as "people persecuted by Pablo
Escobar") emerged as a vigilante group primarily formed to avenge murders
committed at the direction of drug lord Pablo Escobar.  The group conducted
bombings, assassinations, kidnappings, and intimidation targeted at the
infrastructure of Pablo Escobar's drug organization.

[2] The AUC began as a right-wing paramilitary group operating in Colombia.  The
stated objective of the AUC was to defeat the Fuerzas Armada Revolucionarias
de Colombia ("FARC") and the Ejercito de Liberación Nacional ("ELN"), left-
wing paramilitary groups that controlled large portions of Colombia.  The AUC
primarily financed its military operations against the FARC and ELN and
enriched its leaders by producing, selling, and distributing cocaine.

Bergonzoli and Giraldo Perez "rented" an airstrip on land owned by Vanoy.  The airstrip, named "Tower 80," was utilized to fly cocaine loads to various locations in the Bahamas, Central America, and Mexico, with the ultimate destination being the United States.  Vanoy, Bergonzoli, and Giraldo Perez, the three members of L4, would combine their kilograms of cocaine for transportation from the airstrip.

After 1997, L4 dismantled.  Bergonzoli went to work with Carlos Castano, the commander of the AUC, and Giraldo Perez went on to operate his own drug trafficking organization. Giraldo Perez continued, however, to purchase cocaine base and cocaine hydrochloride from AUC members in territory controlled by Vanoy until 2006.

In 2000, Giraldo Perez combined his cocaine with AUC members to be transported and ultimately smuggled into the United States.  By that time, a core group of AUC leaders, including Vanoy and Francisco Zuluada, a/k/a "Gordo Lindo," had evolved, that combined cocaine loads with Giraldo Perez for transportation.  The cocaine was collected and combined on Vanoy's property to more easily permit them to transport the drugs.  Several of these drug shipments are detailed below.

In late 1999 or early 2000, a shipment of 1,000 kilograms of cocaine was seized on board a ship that was forced to dock in Cartagena, Colombia.  These drugs belonged to Giraldo Perez and AUC member Juan Carlos Sierra-Ramirez and were hidden in a furnace on board a freighter.  The ship left the port at Puerto Manaure en route to Honduras with the ultimate destination of the United States.  Law enforcement received information that drugs were on board the freighter and interdicted the ship, forcing it into Cartagena.  The drugs were discovered and seized.

In August 2001, a Spanish drug trafficker purchased 6,400 kilograms of cocaine.  The cocaine was to be transported to Spain by two ships; one with 3,000 kilograms of cocaine and the other with 3,400 kilograms of cocaine.  In loading the drugs, only one of the two ships could be located.  As a result, there were 3,400 kilograms left on the short in Colombia.  The Spanish purchaser had no other way to transport the drugs so he sold the 3,400 kilograms of cocaine back to Giraldo Perez and the other original owners/sellers of the cocaine.  These drugs were ultimately sold to "Nestra," a Mexican drug trafficker who smuggled the cocaine into the United States.  A ship was finally located which successfully transported the 3,400 kilograms of cocaine to Mexico.

Air Plane Loads in 2004

On April 11, 2004 (Easter), an airplane successfully transported 700 kilograms of cocaine to Mexico and ultimately to the United States.  The drug smugglers filed a flight plan and all appeared legal.  The airplane belonged to Mexican owners and was registered in Mexico.  A total of 700 kilograms were flown to a clandestine airstrip on the border between Mexico and Guatemala.  Giraldo Perez had a portion of this load.

Continuing in April 2004, 980 kilograms of cocaine were successfully transported to Guatemala and ultimately smuggled into the United States.  The airplane was a Queen B80 that arrived on a legal flight plan into Colombia from Venezuela.  While the airplane was in the hanger, every item of any weight was removed from the airplane, including the transponder.  The airplane was then flown to "Tower 80," the clandestine airstrip located on Vanoy's property.  The airplane was loaded with 980 kilograms of cocaine and flew to a clandestine airstrip on the Honduras/Guatemala boarder.  Mexican nationals purchased this load for $6,000 dollars per kilogram at the airstrip.  Of this load, between 200-300 kilograms of cocaine were sold by Giraldo Perez.

Also in April of 2004, 1,000 kilograms of cocaine were successfully transported to the Honduras/Guatemala border. This load was similar to the earlier 980 kilogram load; flown from "Tower 80" to a clandestine airstrip on the border between Honduras and Guatemala. The aircraft used was an Aero Commander. The flight was illegal, as no flight plans had been filed. Mexican nationals purchased the cocaine for $6,000 per kilogram at the airstrip. The sellers were the same group as had participated in the previous 980 kilogram load.

In 2005, a Queen 200 airplane landed, after filing a legal flight plan at an airport just outside of Mexico City, with 2,000 kilograms of cocaine aboard. After the aircraft landed, the pilots waited for the individuals who would unload the cocaine from the airplane. After some period of time, local law enforcement officials noticed the pilots and aircraft simply sitting and waiting. Law enforcement officers became suspicious and examined the airplane, eventually discovering and seizing the cocaine and arresting the two Colombia pilots. Giraldo Perez owned approximately 125 kilograms of this load.

Between April and may in the years 2001, 2002, 2003, and 2004, five or six cocaine shipments were coordinated

utilizing "go-fast" boats for Giraldo Perez.  These "go-fast"
boats left from the Atlantic side of Colombia en route to
Honduras, ultimately being smuggled into the United States.  For
each of these loads, an individual named "Jose Pico" received
the drugs in Honduras.  The loads would be 1,200 kilograms each
and Giraldo Perez would own between a quarter and one-half of
the load.  Other owners of the load included high ranking
members of the AUC.

### Conspiracy to Obstruct Justice

In about 2003, Giraldo Perez agreed to contribute
approximately $200,000 to have a Drug Enforcement Administration
("DEA") investigation into his drug trafficking activities
obstructed.  Specifically, Giraldo Perez obtained information
about the DEA's on-going investigation to avoid prosecution and
extradition to the United States.

**The Relevant Statutory Provisions**

The maximum term of imprisonment for Count 1 is life
imprisonment.  If a term of imprisonment is imposed, the Court
is required to impose a term of at least 5 years' supervised
release, pursuant to 21 U.S.C. § 960.  Defendant is not eligible

for probation because the instant offense is one for which
probation has been expressly precluded by statute, pursuant to
18 U.S.C. § 3561(a)(2), 21 U.S.C. § 960, and §5B1.1.(b)(2).

The maximum fine is $4 million, pursuant to 21 U.S.C.
§ 960.  A special assessment of $100 is mandatory pursuant to 18
U.S.C. § 3013.

The maximum term of imprisonment for Count 3 is 20
years, pursuant to 18 U.S.C. § 1512.  If a term of imprisonment
is imposed, the Court may impose a term of supervised release of
not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).
Defendant is not eligible for probation because he is being
sentenced at the same time to a term of imprisonment on a
different count or case, pursuant to 18 U.S.C. § 3561(a)(3) and
because the instant offense is one for which probation has been
expressly precluded by statute, pursuant to §5B1.1(b)(3).

The maximum fine is $250,000, pursuant to 18 U.S.C. §
3571.  A special assessment of $100 is mandatory pursuant to 18
U.S.C. § 3013

**The Guidelines**

The November 1, 2013 edition of the United States
Sentencing Commission Guidelines Manual has been used in this
case for calculation purposes, pursuant to § 1B1.11(a).  Count 1
and Count 3 are grouped pursuant to §3D1.2(c), as the
obstruction charge is treated as an adjustment to the underlying
narcotics offense.

The guideline for 21 U.S.C. § 960 is found in §2D1.1,
pursuant to which Count 1 has a base offense level of 38.

Because the defendant appears to have obstructed
justice by obtaining information about a DEA investigation to
avoid prosecution and extradition, the offense level is
increased by two levels.  U.S.S.G. § 3C1.1.

Based on Giraldo Perez' statement of Acceptance of
Responsibility and allocution before the Court, Defendant has
shown recognition of responsibility for the offense.
Furthermore, Defendant has assisted authorities in the
investigation or prosecution of Defendant's own misconduct by
timely notifying authorities of his intention to plead guilty.
Accordingly, the offense level is reduced three levels.
U.S.S.G. §§ 3E1.1(a) & (b).

The total adjusted offense level is 37.

Giraldo Perez has no known criminal convictions. Therefore, Defendant has zero criminal history points and a Criminal History Category of I.

Based upon a total offense level of 37 and a Criminal History Category of I, the guideline range of imprisonment is 210 to 262 months for Count 1 and 210 to 240 months for Count 3.

The guideline range for a term of supervised release is at least five years for Count 1 and one to three years for Count 3. The Court shall order a term of supervised release when required by statute or except for a deportable alien who is likely to be deported after imprisonment, when a term of imprisonment of more than one year is imposed. U.S.S.G. § 5D1.1(a)(2).

Defendant is not eligible for probation on either Count, as the offenses are offenses for which probation has been expressly precluded, pursuant to 18 U.S.C. 3561(a)(2), 21 U.S.C. § 960, and U.S.S.G. § 5B1.1(b)(2), for Count 1, and 18 U.S.C. § 3561(a)(3) and U.S.S.G. § 5B1.1(b)(3) for Count 3.

The fine range for the offense conduct is $20,000 to
$4 million. Subject to Defendant's ability to pay, in imposing
a fine, the Court shall consider the expected costs to the
Government of any imprisonment, probation, or supervised release
pursuant to §5E1.2(d)(7). The most recent advisory from the
Administrative Office of the United States Courts suggests a
monthly cost of $2,412.33 to be used for imprisonment, a monthly
cost of $278.95 for supervision, and monthly cost of $2,244.17
for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court
also gives due consideration to the remaining factors identified
in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not
greater than necessary," as is required by the Supreme Court's
decision in Booker, 543 U.S. 220, and the Second Circuit's
decision in Crosby, 397 F.3d 103. In light of the Court's
statutory responsibility "to 'impose a sentence sufficient, but
not greater than necessary' to accomplish the goals of
sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007)
(quoting 18 U.S.C. § 3553(a)), and having considered the
Guidelines and all of the factors set forth in § 3553(a), it is

determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Dagoberto Perez shall be sentenced to a term of 210 months' imprisonment to be followed by one year of supervised release.

As mandatory conditions of his supervised release, the Defendant shall:

(1)   Not commit another federal, state or local crime;

(2)   Not illegally possess a controlled substance; and

(3)   Not possess a firearm or destructive device;

The mandatory drug testing condition is suspended based on the Court's determination that Giraldo Perez poses a low risk of future substance abuse.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

16

(1)   Defendant shall provide the probation officer with access to any requested financial information.

(2)   Defendant shall obey the immigration laws and comply with the directives of the immigration authorities.

(3)   Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in reasonable manner.  Failure to submit to a search may be grounds for revocation.  Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

Defendant is to report to the nearest Probation Office within 72 hours of release from custody.  The Defendant is to be supervised by the district of residence.

Defendant has been detained without bail since his arrest.  He is not a candidate for voluntary surrender because of

17

the provisions found in 18 U.S.C. § 3143(a)(2).

It is further ordered that the Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

Defendant shall forfeit to the United States, pursuant to 18 U.S.C. §§ 1963(a)(1), (a)(2), and (a)(3), all property real and personal involved in the offense or traceable to such property.

Defendant does not have the ability to pay a fine and so the fine in this case is waived.

It is so ordered.

New York, NY
October  6  , 2014

_____
ROBERT W. SWEET
U.S.D.J.